UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

JOHNSON & TOWERS, INC.,
et al.,

                    Plaintiffs,          Civil No. 14-5528 (NLH/KMW)

v.

                                         <u>OPINION</u>

CORPORATE SYNERGIES GROUP, LLC,
et al.,

                    Defendants.
_____

**APPEARANCES:**

Trevor J. Cooney, Esquire
Archer & Greiner, PC
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey 08033-0968

        *Counsel for Plaintiffs*

Matthew S. Marrone, Esquire
Goldberg Segalla LLP
901 Carnegie Center
Suite 100
Princeton, New Jersey 08540

        *and*

Saleel Vijay Sabnis, Esquire
Goldberg Segalla LLP
1700 Market Street
Suite 1418
Philadelphia, Pennsylvania 19103

        *Counsel for Defendant Corporate Synergies Group, LLC*

Melissa J. Kanbayashi, Esquire
Sean X. Kelly, Esquire
Marks, O'Neill, O'Brien, Doherty & Kelly, PC
6981 North Park Drive
Cooper River West
Pennsauken, New Jersey 08108

>    *Counsel for Defendants Kistler Tiffany Benefits*
>    *and Suzanne Bruce*

Meghan Catherine Goodwin, Esquire
Clyde & Co US LLP
200 Campus Drive
Suite 300
Florham Park, New Jersey 07932

>    *Counsel for Defendant Standard Security Life Insurance*
>    *Company of New York*

**HILLMAN, District Judge**:

Presently before the Court is the motion [Doc. No. 16] of Defendants, Kistler Tiffany Benefits (hereafter, "KTB") and Suzanne Bruce (hereafter, "Bruce"), seeking dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The Court has considered the submissions of the parties and decides this matter pursuant to Fed. R. Civ. P. 78.

For the reasons that follow, the motion to dismiss will be denied.

I.    **BACKGROUND**

Plaintiff Johnson & Towers, Inc. (hereafter, "J&T") is a family business that sells and services diesel engines, transmissions and related components, parts and accessories for

2

markets that include medium and heavy duty vehicles and equipment.  (Compl. [Doc. No. 1] ¶ 12.)  J&T provided health insurance to its eligible employees and their dependents through the Johnson & Towers, Inc. Employee Healthcare Plan (hereafter, the "Plan"), a self-funded insurance plan.  (Id. ¶ 13.)  The Plan was established through and governed by a Master Plan Document.  (Id.)  In addition to J&T, the Plan and David Johnson, as Plan Trustee and Named Fiduciary, are also plaintiffs in this action.  (Compl. ¶¶ 3, 4.)

This case arises out of the responsibility to pay medical bills for Patricia Johnson, the widowed spouse of Walter Johnson Jr., who had been a shareholder of J&T.  J&T provided health insurance to eligible employees and their dependents up to $125,000, and any additional amounts were to be paid through through stop-loss insurance policies.[1]  (Id. ¶¶ 17, 28.)  In 2013, Ms. Johnson incurred medical bills in the amount of $387,710.82.  (Id. ¶¶ 36, 37.)  After J&T paid the $125,000 deductible, the amount due was $262,710.82.  (Id. ¶ 39.)

J&T believed that the remaining balance should have been paid through its stop-loss insurance policies, but the stop-loss carrier -- Standard Security Life Insurance Company of New York

---

[1]  "Stop-loss insurance allows the insured to bear the risk of few or small claims but protects the insured from the risk of many or large claims." Feigenbaum v. Summit Health Adm's, No. Civ. A. 01-805, 2008 WL 2386168, at *1 (D.N.J. June 9, 2008).

(hereafter, "Standard"), also a defendant in this action --
refused payment on the ground that Ms. Johnson was no longer
eligible for benefits after her husband, the covered employee,
died in 2005. (Id. ¶ 41.) J&T argues that Ms. Johnson should
have been covered under a "Widowed Spouse Amendment" to the
Master Plan Document. (See id. ¶ 42.) Pursuant to the Widowed
Spouse Amendment, the Master Plan Document would include as
covered individuals the widowed spouses of J&T's shareholders
until age 65 or until the spouse remarried, whichever came
first. (Id. ¶ 20.) However, when J&T switched stop-loss
carriers to Standard in 2008, it appears that the new insurance
policy did not include the Widowed Spouse Amendment. (Id. ¶¶
29, 50.)

Plaintiffs bring this action against J&T's insurance
brokers, Corporate Synergies Group, LLC (hereafter, "CSG") and
KTB, as well as Defendant Bruce, an agent who had been employed
by CSG and later KTB and was the primary point of contact
between the brokers and J&T. (Id. ¶ 18.) CSG was first engaged
to procure the stop-loss health insurance policies for J&T.
(Id.) When Bruce left the employment of CSG and joined KTB, J&T
engaged KTB as its insurance broker and Bruce remained the
primary point of contact. (Id. ¶ 35.) Plaintiffs allege that
when J&T changed stop-loss carriers to Standard in 2008, they
instructed CSG and Bruce to ensure that the substantive

4

provisions of the stop-loss policy and the Master Plan Document with Standard matched the prior policy and Master Plan Document, including the Widowed Spouse Amendment.  (Id. ¶¶ 29, 30.)  As Standard has taken the position that the stop-loss policy does not include coverage for widowed spouses, J&T contends that CSG, KTB and Bruce failed in their duty as J&T's insurance broker to procure and maintain stop-loss insurance that provided the coverage requested by J&T.  (Id. ¶¶ 50-51, 55.)

Plaintiffs thus assert a claim against CSG, KTB and Bruce on the basis that these defendants breached the fiduciary duties they owed to the Plan under Section 409(a) of the Employee Retirement Income Security Act (hereafter, "ERISA"), 29 U.S.C. § 1109(a).  (Compl. ¶¶ 49-51.)  Plaintiffs also assert a state law claim against these defendants for professional malpractice based on their alleged failure to procure and maintain proper and adequate stop-loss coverage.  (Id. ¶¶ 54-56.)  In addition, Plaintiffs assert a claim against Standard for declaratory judgment on the issue of whether Plaintiffs are entitled to stop-loss coverage under the Standard policy for the claim for Ms. Johnson.  (Id. ¶ 58.)

In the motion to dismiss, KTB and Bruce argue that Plaintiffs do not have standing to bring this action, and that the case is not ripe for disposition.  The crux of Defendants' argument is that Plaintiffs were not denied benefits and have no

5

right to bring a claim to recover the unpaid medical bills of
Ms. Johnson.  (Br. in Supp. of Defs., Kistler Tiffany Benefits
and Suzanne Bruce's, Mot. to Dismiss the Compl. for Failure to
State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 16-
3] (hereafter, "Defs.' Br.") 1.)  Defendants contend that
Plaintiffs lack standing under either ERISA, which they argue
only gives the right to bring a civil action to a "participant
or beneficiary seeking to recover benefits due," or under common
law because Plaintiffs have not suffered an injury in fact.
(Id. at 8-10.)  Defendants argue that Plaintiffs' claims are not
ripe because Plaintiffs suffered no damages, noting in this
regard that Plaintiffs have not yet paid the outstanding medical
bills.  (Id. at 11-12.)

    In response, Plaintiffs clarify that they are not pursuing
a "denial of benefits" claim, but instead are alleging a breach
of fiduciary duty claim.  (Pls.' Br. in Opp. to Mot. to Dismiss
Compl. Filed by Defs. Kistler Tiffany Benefits and Suzanne Bruce
[Doc. No. 27] (hereafter, "Pls.' Opp. Br.") 1.)  Plaintiffs
argue that because they are "fiduciaries" under the Plan, they
have standing to bring a claim for the losses to the Plan that
resulted from the insurance brokers' failure to comply with
their fiduciary duties.  (Id.)  They also submit a letter from
their third-party administrator of health benefits, which
indicates that any payments made by the Plan to the third-party

6

administrator would first be applied to pay the outstanding
claims for Ms. Johnson before being applied to fund any other
claims under the group health program.  (Cert. of David Johnson
in Opp. to Mot. to Dismiss Compl. (hereafter, "Johnson Cert."),
Ex. A.)  Plaintiffs also request leave to amend the complaint in
the event the Court finds that the complaint is deficient.
(Pls.' Opp. Br. 8.)

    Subsequent to the filing of the complaint, and after the
motion to dismiss was filed, Plaintiffs through the consent of
all parties filed an amended complaint.  The Consent Order
granting Plaintiffs leave to file the amended complaint provides
that KTB and Bruce "are not required to file a responsive
pleading to Plaintiffs' First Amended Complaint until the Court
decides their pending Rule 12(b)(6) motion[.]"  (Consent Order
[Doc. No. 38], at 2.)  Because the original complaint is no
longer the operative pleading, it appears that the pending
motion to dismiss is moot.  Indeed, KTB and Bruce stated several
times in their reply brief that if Plaintiffs are granted leave
to amend, they will evaluate and address the averments in the
amended pleading and respond accordingly.  (Reply Br. in Supp.
of Defs., Kistler Tiffany Benefits and Suzanne Bruce's, Mot. to
Dismiss the Compl. for Failure to State a Claim Pursuant to Fed.
R. Civ. P. 12(b)(6) [Doc. No. 28] (hereafter, "Defs.' Reply
Br.") 2, 3.)  However, KTB and Bruce continue to seek a decision

7

on the motion to dismiss.  Because the motion relates to justiciability issues rather than the sufficiency of the allegations in the complaint, the Court finds it proper to decide the motion to dismiss notwithstanding the subsequent filing of the amended complaint.

## II.  <u>JURISDICTION</u>

Plaintiffs bring this action pursuant to ERISA. Accordingly, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## III. <u>STANDARD FOR DISMISSAL</u>

### A.  Standing

Although Defendants filed their motion pursuant to Fed. R. Civ. P. 12(b)(6), a motion to dismiss for lack of standing is properly brought under Fed. R. Civ. P. 12(b)(1) because standing is a jurisdictional matter.  <u>Ballentine v. United States</u>, 486 F.3d 806, 810 (3d Cir. 2007).  Article III of the Constitution limits the "judicial power" of the United States to the resolution of certain "cases" and "controversies."  <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).  "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request . . . in terms

that have a familiar ring to those trained in the legal
process." Id.

"[T]he doctrine of standing serves to identify those
disputes which are appropriately resolved through the judicial
process." Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S. Ct.
1717, 109 L. Ed. 2d 135 (1990). A party who seeks to invoke the
Court's jurisdiction must demonstrate that he has standing by
showing that he suffered an "actual or threatened injury," that
the injury is traceable to the conduct of the defendant, and
that the injury is "likely to be redressed by a favorable
decision." Valley Forge Christian Coll., 454 U.S. at 472, 102
S. Ct. 752 (internal quotations omitted). "This triad of injury
in fact, causation, and redressability constitutes the core of
Article III's case-or-controversy requirement, and the party
invoking federal jurisdiction bears the burden of establishing
its existence." Steel Co. v. Citizens for a Better Env't, 523
U.S. 83, 103-04, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

"In addition to having Article III standing, an ERISA
plaintiff must also have statutory standing." Edmonson v.
Lincoln Nat'l Life Ins. Co., 725 F.3d 406, 419 (3d Cir. 2013),
cert. denied, 134 S. Ct. 2291, 189 L. Ed. 2d 173 (2014).
"'Statutory standing is simply statutory interpretation,' and we
ask whether the remedies provided for in ERISA allow the
particular plaintiff to bring the particular claim.'" Id.

9

(quoting Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007)).

When a party challenges standing, the Court's analysis depends on whether the challenge is based on a "factual attack" or on a "facial attack." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "[A] facial attack 'contests the sufficiency of the pleadings,' 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In this case, KTB and Bruce raise a factual attack, claiming that Plaintiffs lack standing because they did not in fact pay the outstanding medical bills for Ms. Johnson.

If a party argues that the Court lacks subject matter jurisdiction because of the facts of the case, the Court may consider evidence outside of the pleadings. Constitution Party, 757 F.3d at 358. "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. In cases challenging the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proof that jurisdiction exists. Id.

**B.    Ripeness**

"The function of the ripeness doctrine is to prevent federal courts, 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Philadelphia Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v. Ridge, 150 F.3d 319, 323 (3d Cir. 1998)(quoting Abbott Labs v. Gardner, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)).  "A claim is not ripe for adjudication if it rests upon ''contingent future events that may not occur as anticipated, or indeed may not occur at all.''"  Texas v. United States, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)(internal citations omitted).[2]

A ripeness challenge, like a challenge to standing, is also properly analyzed under Fed. R. Civ. P. 12(b)(1).  See Kushi v. Romberger, 543 F. App'x 197, 199 (3d Cir. 2013); A.D. v. Haddon Heights Bd. of Educ., --- F. Supp. 3d ---, Civ. A. No. 14-880, 2015 WL 892643, at *7 (D.N.J. Mar. 2, 2015).  As with standing,

---

[2] "The concepts of standing and ripeness require related but distinct inquiries. 'The ripeness doctrine is often confused with the standing doctrine.  Whereas ripeness is concerned with when an action may be brought, standing focuses on who may bring a ripe action.'"  Pic-A-State Pa., Inc. v. Reno, 76 F.3d 1294, 1298 n.1 (3d Cir.), cert. denied, 517 U.S. 1246, 116 S. Ct. 2504, 135 L. Ed. 2d 194 (1996) (internal citations omitted).

the Court may consider evidence outside of the pleadings when ripeness arguments present factual challenges to subject matter jurisdiction.  A.D., 2015 WL 892643, at *7; Engo Co. v. New Jersey Carpenters Fund, Civ. A. No. 13-5252, 2014 WL 268690, at *1 n.1, *4 (D.N.J. Jan. 21, 2014).  Because Defendants' argument as to ripeness is also premised on Plaintiffs' failure to pay any of Ms. Johnson's outstanding medical bills, the Court construes the challenge as a factual attack on subject matter jurisdiction.

IV.  **ANALYSIS**

   A.   **Count I -- ERISA**

   "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'"  Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004)(quoting 29 U.S.C. § 1001(b)).  In Section 409(a), Congress provided a cause of action for breach of fiduciary duties by a fiduciary to an employee benefit plan. This Section states:

   Any person who is a fiduciary with respect to a plan
   who breaches any of the responsibilities, obligations,
   or duties imposed upon fiduciaries by this subchapter
   shall be personally liable to make good to such plan

12

> any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of
> such fiduciary which have been made through use of
> assets of the plan by the fiduciary, and shall be
> subject to such other equitable or remedial relief as
> the court may deem appropriate, including removal of
> such fiduciary.

29 U.S.C. § 1109(a).

The individuals or entities who are empowered to bring a civil action under Section 409(a) are enumerated in ERISA Section 502.  That section provides, in relevant part, that a civil action may be brought by "(1) a participant or beneficiary[,] . . . (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;" or "(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  29 U.S.C. § 1132(a).

In their moving brief, Defendants argue that Plaintiffs do not have standing because they are not a "participant or beneficiary" under Section 1132(a)(1) of ERISA.  (Defs.' Br. 8.) Plaintiffs note in their opposition papers that they do not bring this action as a "participant or beneficiary" under Section 1132(a)(1), but as fiduciaries under Sections 1132(a)(2) and (a)(3)(B), and that they are entitled to do so because they

13

fall within ERISA's definition of a "fiduciary."  (Pls.' Opp. Br. 1.)

Under ERISA, a person is a "fiduciary" if "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  In addition, a "named fiduciary" under ERISA is a "fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly."  29 U.S.C. § 1102(a).

In the amended complaint, Plaintiffs aver that J&T and Johnson are "named fiduciaries" under § 1102(a) and that Johnson is also a "fiduciary" under § 1002(21)(A).  (Am. Compl. ¶¶ 2, 4.)  Defendants do not contest that Plaintiffs are "fiduciaries" as defined by ERISA.  Defendants assert in their reply brief only that Plaintiffs cannot seek relief under Section

14

1132(a)(3)(B) because this section allows for equitable relief and not the monetary damages requested by Plaintiffs.  (Defs.' Reply Br. 2.)  This argument is flawed for two reasons.  First, the ERISA claim in both the original complaint and the amended complaint expressly seeks equitable relief; and second, even if Plaintiffs did not have standing under Section 1132(a)(3)(B), this argument does not demonstrate that Plaintiffs lack standing under Section 1132(a)(2).[3]  Because Plaintiffs bring this action as fiduciaries, there is no argument that Plaintiffs are not "fiduciaries," and Congress has authorized "fiduciaries" to bring a civil action under Section 409(a), the Court finds that Plaintiffs have statutory standing to bring a claim to recover losses to the Plan.

Defendants also challenge constitutional standing to assert the ERISA claim because Plaintiffs have not suffered an "injury in fact" in that they purportedly have not been required to pay the outstanding medical bills of Ms. Johnson.  Defendants argue

---

[3] Although not expressly stated, Defendants appear to argue that Plaintiffs cannot premise standing on 29 U.S.C. § 1132(a)(2) because that subsection only addresses claims for breach of fiduciary duty, and such a claim cannot be brought because Defendants purportedly are not fiduciaries.  (Defs.' Reply Br. 2.)  As discussed infra, Plaintiffs are asserting a claim for breach of fiduciary duty against CSG, KTB and Bruce, and standing can thus be predicated on § 1132(a)(2).  To the extent KTB and Bruce take the position that they are not "fiduciaries," they are challenging the merits of the claim.  Such argument was only raised in the reply brief and will not be addressed at this time.

that the only person who has standing to raise such a claim is Ms. Johnson.  (Defs.' Br. 10.)

Plaintiffs, however, are not seeking recovery on behalf of Ms. Johnson; their claims are for losses to the Plan because of Defendants' alleged breach of fiduciary duty.  As such, the Plan -- not Ms. Johnson -- has suffered an "injury in fact" as a result of Defendants' alleged breach of fiduciary duty sufficient to demonstrate standing at this time.  An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical[.]''" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations omitted).

Another court in this district already considered whether an employee benefit plan suffered damages as a result of a broker's breach of fiduciary duty under ERISA Section 409(a). Feigenbaum v. Summit Health Adm's, No. Civ. A. 01-805, 2008 WL 2386168, at *1 (D.N.J. June 9, 2008).[4]  The plaintiffs were the employer, the employee benefit plan, and the plan's trustee, and they brought suit against a health insurance agency and an

---

[4] Although in Feigenbaum the court discussed the issue in the context of whether the plaintiffs had damages to support an element of their claim, the Court finds the analysis relevant to the standing inquiry, for if the plaintiffs have damages then they have suffered an "injury in fact" for purposes of standing.

insurance broker.  2008 WL 2386168, at *1.  The defendants assisted the plaintiffs in obtaining stop-loss insurance, and when the term of the policy expired they obtained insurance from a new carrier.  Id. at *1-2.  However, for unknown reasons, the employee benefit plan was without stop-loss insurance for a period of several months before the new plan began.  Id. at *2. The plaintiffs brought a claim under ERISA Section 409(a) against the insurance agency and broker for breach of fiduciary duty based on the alleged failure to secure continuous stop-loss insurance.  Id.

Although the defendants argued that the plaintiffs' claim must fail because they did not suffer damages, the court found that plaintiffs sufficiently demonstrated that they had damages resulting from the gap in stop-loss insurance, because the plan received medical claims that were not covered by either the plan's initial stop-loss insurance or its replacement stop-loss insurance.  Id. at *7.  The court cited evidence that "the gap in stop-loss insurance resulted in the Plan being liable for claims that the initial stop-loss insurance would have covered had Defendants ensured that it remained in place."  Id.

Here, too, Plaintiffs provide evidence that they have liability for claims for Ms. Johnson that would have been covered if Defendants procured proper stop-loss coverage. First, Plaintiffs allege that they pay medical bills and are

17

then reimbursed by the stop-loss carrier if the aggregate claims during a contract period exceed J&T's deductible. (Am. Compl. ¶ 20.) This supports their contention that the Plan, and not Ms. Johnson, has an indebtedness for the outstanding medical bills. Further, Plaintiffs submit a letter from their third-party administrator which states that Plaintiffs have a contractual obligation to fund claims incurred by Plaintiffs' participants, independent of whether Plaintiffs' stop-loss carrier approves or denies the claims. (Johnson Cert., Ex. A.) In addition, the letter states that as of September 26, 2014, any money received from Plaintiffs to fund claims would first be applied to pay outstanding claims for Ms. Johnson in the amount of $222,442.09.[5] (Id.) Thus, it appears that funds from the Plan have been or are being diverted towards the outstanding claims for Ms. Johnson.

The Court finds that the diminution in the value of the Plan's assets demonstrates that the Plan has suffered a concrete and particularized injury as a result of Defendants' alleged failure to procure appropriate stop-loss insurance coverage. As such, at this time Plaintiffs have demonstrated that they

---

[5] The Court notes that the amount of indebtedness alleged in the amended complaint is $262,710.82. (Am. Compl. ¶ 48.) There is no explanation for the discrepancy between the amount cited in the amended complaint and the amount identified in the letter from Plaintiffs' third-party administrator.

satisfy the "injury in fact" requirement for constitutional standing.

**B.   Count II -- Professional Malpractice**

Defendants also argue that the common law claim for professional malpractice must be dismissed for lack of standing. The allegations supporting this state law cause of action are based on the same conduct underlying the ERISA claim.  For the reasons discussed above, the Court finds that Plaintiffs have also sufficiently demonstrated at this stage of the litigation an "injury in fact" as to this cause of action.  In short, Defendants' purported failure to procure and maintain stop-loss insurance that provided coverage for widowed spouses of covered employees has forced Plaintiffs to use Plan assets to pay medical expenses that should have been covered by stop-loss insurance.

**C.   Ripeness**

In addition to issues of standing, Defendants also raise another justiciability issue in the form of a challenge to ripeness.  Defendants assert that the claims are not ripe because Plaintiffs have not suffered any damages.  As set forth above, it appears that since September 26, 2014, Plan assets have been used toward payment of Ms. Johnson's claim.  Moreover, in the amended complaint, Plaintiffs aver that Standard has denied coverage and continues to claim that coverage for Ms.

19

Johnson terminated in 2005.  (Am. Compl. ¶¶ 50-53.)  Therefore, at this time, the Plan will not be reimbursed for Ms. Johnson's medical bills through stop-loss insurance.

Under these circumstances, Plaintiffs are not seeking a premature adjudication of the merits based upon contingent future events.  They have used Plan assets and are seeking recovery for losses to the Plan.  Accordingly, the Court finds that Plaintiffs' claims are ripe for adjudication.[6]

**D.   Failure to State a Claim against KTB and Bruce**

Finally, the Court notes various statements in Defendants' reply brief that seemingly indicate a challenge to the sufficiency of Plaintiffs' allegations under Fed. R. Civ. P.

---

[6] In so finding, the Court notes that Plaintiffs also bring a claim against Standard -- the stop-loss insurance carrier -- seeking a determination that Standard has a duty to provide coverage for Ms. Johnson's claim.  Plaintiffs thus proceed on a cause of action for the negligence of their agent in failing to procure proper stop-loss insurance coverage, while simultaneously claiming they had appropriate stop-loss insurance coverage under their insurance contract with Standard.  The Court notes that Fed. R. Civ. P. 8(e)(2) expressly permits pleading in the alternative, and at least one court in the Third Circuit has held that when inconsistent and contingent claims are pleaded in the alternative, such claims may be ripe but warrant a stay pending resolution of the claims pled in the alternative.  See, e.g., Dimensional Music Publishing, LLC v. Kersey ex rel. Estate of Kersey, 448 F. Supp. 2d 643, 653 (E.D. Pa. 2006); see also In re G-I Holdings, Inc., Civ. A. No. 04-3423, 2006 WL 1751793, at *9 (D.N.J. June 21, 2006) ("The ripeness doctrine does not prohibit the pleading of contingent claims.").  No party has addressed whether a stay of the claims against KTB and Bruce is appropriate pending resolution of the claims against Standard.

12(b)(6).  Defendants state, for example, that "[i]t is undisputed that KTB Defendants are not the fiduciary under the Plan.  They were merely the insurance broker who obtained stop loss insurance for Plaintiffs."  (Defs.' Reply Br. 2.) Defendants also state that "[t]he fact is that moving defendants were simply Plaintiffs' insurance broker.  They did not prepare the Plan and most certainly were not identified as fiduciaries within the Plan."  (Id. at 4.)

As noted above, Section 409(a) provides a cause of action against a fiduciary of an employee benefit plan for a breach of fiduciary duty.  If Defendants now contend that they are not "fiduciaries" of the Plan, their challenge is to the merits of the claims under Fed. R. Civ. P. 12(b)(6).  This argument is separate from the standing and ripeness issues and was not raised in the moving papers.  Accordingly, it will not be addressed at this time.[7]

_____

[7] In Feigenbaum, the court indicated that "many courts have found insurance providers or brokers to be fiduciaries under ERISA" where the insurers or brokers "play central roles in determining what benefits the plans will provide or where a plan de facto delegates its administration to an insurance agent or broker[.]" 2008 WL 2386168, at *4.  However, where insurance providers or brokers "merely provide insurance or brokerage services to the plan," courts have found brokers not to be fiduciaries.  Id. "The Court's inquiry is to locate where on the spectrum between mere provision of insurance and de facto total control of plan decisions and assets the alleged fiduciary's actions lie."  Id. Here, the amended complaint contains allegations concerning the role of CSG, KTB and Bruce in decisions about stop-loss

V.    <u>CONCLUSION</u>

For the reasons discussed above, the Court finds that Plaintiffs have standing to bring their claims based upon KTB and Bruce's alleged failure to procure stop-loss insurance coverage that included coverage for widowed spouses.  The Court also finds that such claims are ripe.  Therefore, the motion of KTB and Bruce to dismiss will be denied.

An Order accompanying this Opinion will be entered.

<u>     s/ Noel L. Hillman     </u>
NOEL L. HILLMAN, U.S.D.J.

Date: June 23, 2015

At Camden, New Jersey

---

insurance on behalf of J&T.  (<u>See, e.g.</u>, Am. Compl. ¶¶ 33, 35, 36, 38, 44.)  The Court does not address the sufficiency of such allegations as the parties have not had an opportunity to brief the issue, but notes that an insurance broker may be liable as a fiduciary under ERISA under appropriate factual circumstances.